## T. J. SHAY v. SECURITY BANK OF DULUTH.[1]

January 22, 1897.

Nos. 10,218—(236).

**Chattel Mortgage—Insolvency of Mortgagor.**

*Held*, a chattel mortgage executed before, but not filed of record until after, the mortgagor makes an assignment under the insolvency law for the benefit of his creditors, is void as to such creditors.

**Same—Who may Attack.**

*Held*, the purchaser of the mortgaged property from the assignee has the same right as the assignee himself to avoid the chattel mortgage on the ground that it is fraudulent as to such creditors.

**Same—Burden of Proof.**

*Held*, such an assignee is presumed to represent creditors of the assignor, and the burden is on the party asserting the contrary to prove it.

**Same.**

*Held*, the burden is also on the party asserting it to prove that the creditors of the assignor had such notice of such unrecorded mortgage that they are not in position to take advantage of the failure to file it of record.

Appeal by plaintiff from a judgment of the district court for St. Louis county, in favor of defendant, entered in pursuance of the findings and order of Moer, J.    Reversed.

[1] Reported in 69 N. W. 920.

*McGindley & Whitely*, for appellant.
*McCordic & Crosby*, for respondent.

CANTY, J. We shall state the facts in chronological order. On January 6, 1896, Nellie Slater was the owner and in possession of a stock of goods, and on that day executed and delivered to defendant a chattel mortgage on the same to secure her note to defendant for $600. On February 6, 1896, she made an assignment for the benefit of her creditors, under the insolvency law of this state, to one Warfield, who qualified, and entered upon the discharge of his trust. On February 18, defendant filed of record the chattel mortgage in the city clerk's office. On February 20, Warfield, as assignee, sold and delivered said stock of goods to plaintiff. On February 23, "defendant, without the permission and consent of plaintiff, took possession of said goods under and by virtue of its said chattel mortgage." Plaintiff brought replevin. On the trial before the court without a jury, the court found for defendant, and from the judgment entered in his favor plaintiff appeals. It will be observed that the assignment was made a month after the chattel mortgage was executed, and 12 days before it was filed of record.

1. It has frequently been held by this court that a chattel mortgage which has not been filed in the proper office until after an assignment for the benefit of creditors, under the insolvency law, is void as to the creditors of the assignor. Farmers' L. & T. Co. v. Minneapolis E. & M. W., 35 Minn. 543, 29 N. W. 349; Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117; Thomas Mnfg. Co. v. Foote, 46 Minn. 240, 48 N. W. 1019.

2. Respondent's contention that, while the assignee can avoid such a mortgage, the purchaser from him cannot do so, is not well founded. The purchaser at an execution sale of land conveyed away by the judgment debtor in fraud of his creditors may set aside the conveyance (Campbell v. Jones, 25 Minn. 155); and, in our opinion, a purchaser of personal property from such an assignee has the same right as the assignee himself to avoid such a chattel mortgage as fraudulent as to the creditors of the assignor.

3. It does not affirmatively appear that the assignor represents any creditors, and respondent contends that it must affirmatively appear that he did, before plaintiff can recover. We cannot agree with respondent. G. S. 1894, § 4233, provides:

"That in all cases of general assignments for the benefit of creditors, the assignee or assignees shall be considered as representing the rights and interests of the creditors of the debtor or debtors making the assignment, as against all transfers and conveyances of property which would be held to be fraudulent or void as to creditors; and shall have all the rights which such creditors would have to avoid such fraudulent conveyances and transfers."

The legislature has declared that the assignee "shall be considered as representing" such creditors, which is equivalent to saying that he shall be presumed to represent such creditors. The above section of the old assignment law is made applicable to the insolvency law of 1881 by section 1 of the latter (G. S. 1894, § 4240). The practice under the insolvency law has always proceeded on the theory that the assignor is presumed to have had creditors and to have been insolvent when he made the assignment. Any other theory would require the assignee, almost every time he went into court, to take all the creditors along with him as witnesses. The administration of insolvent estates is expensive enough without inaugurating any such unreasonable practice. Of course, no such inconvenience in practice would arise under an assignment law under which the assignee does not represent creditors, because he would not be involved in litigation in which he could and should invoke the rights of creditors. But, under our insolvency law, assignees are almost continually invoking these rights. If, every time he attempts to repudiate a transaction of the assignor as an unlawful preference or as a fraud on creditors, he must show that there are creditors whom he represents, his authority is, indeed, very frail, and his duties very embarrassing. It is contended that he must show that he represents at least one creditor. Suppose he does this, and when he rests the opposite party shows that this particular creditor is not in position to assert that the transaction is fraudulent as to him,— as, for instance, in this case, that such creditor had notice of the unrecorded chattel mortgage from the time it was executed. What can the assignee do then? He will find himself defeated, although there were in fact many other creditors whom he represented, but as to whom he introduced no evidence. No, the assignee could not safely rest until he had proved every creditor's claim in every such case. The legislature never intended any such unreasonable practice. It must, under the statute, be presumed that the assignee represents

67 M.—19

creditors, and the burden is on the opposite party to show that he does not.

The case of Baker v. Pottle, 48 Minn. 479, 51 N. W. 383, is not, as respondent contends, opposed to this view. In that case, although the mortgage was not filed for two months after it was executed, it was filed ten days before the receiver in insolvency was appointed. The mortgage, having been filed of record before the mortgaged property was levied on by creditors, or sequestered for their benefit, was not void in law, under G. S. 1894, § 4129, as to all the creditors of the assignor, generally; and it does not appear from a reading of the whole opinion that the court intended to hold that it was. Under the circumstances, the agreement to withhold the mortgage from record and the withholding it from record were, as to creditors generally, merely badges of fraud which warranted the court in finding that the mortgage was fraudulent in fact. But there was one creditor whose rights were greater than those of the creditors generally. His debt was incurred during the time the mortgage was being withheld from record, and at a time when he had no notice of the existence of the mortgage. As against him, the mortgagee was estopped from asserting any rights under the mortgage, and the court held that the assignee represented this creditor so as to be able to invoke the aid of this additional ground for attacking the mortgage. To require an assignee to plead and prove an exceptional and peculiar right, such as this, is very different from requiring him to plead or prove that he represents creditors of the ordinary and usual character.

4. The burden was also on defendant to show that the creditors of the insolvent, Nellie Slater, had such notice of the existence of the chattel mortgage that they are not entitled to take advantage of the failure to file it of record. Thomas Mnfg. Co. v. Foote, supra. This disposes of the case.

The judgment is reversed, and, on the findings of fact, judgment is ordered for plaintiff.

START, C. J. (dissenting). I dissent from so much of the decision of the court as, in effect, holds that in an action by an assignee in a voluntary assignment for the benefit of creditors under the insolvency laws of the state, to set aside a transfer of property, valid

as between the parties but voidable as to creditors without notice, it will be presumed without proof that there are such creditors. Also to the conclusion that in this particular case the facts found by the trial court entitle the plaintiff to judgment. The trial court found that the defendant's mortgage was given in the ordinary course of business to secure a present loan of money, without any intention of defrauding the creditors of the mortgagor. The mortgage was not filed until after the mortgagor had made a voluntary assignment in insolvency for the benefit of her creditors, but it was duly filed before the plaintiff purchased the chattels covered by the mortgage from the assignee. The purchaser brought this action against the defendant, who was in possession of the chattels as such mortgagee, to recover possession of them. Conceding that the plaintiff has the same right to avoid the mortgage as the assignee, it seems to me that the findings fall short of showing that the plaintiff is entitled to judgment, for there is no finding that there were at the time of the sale to the plaintiff any existing creditors who could avoid the mortgage, or any creditors who had or were entitled to prove their debts against the estate of the mortgagor. The only finding referring directly or indirectly to the existence of such creditors is No. 5, which is in these words:

"That upon the 6th day of February, 1896, the said Nellie Slater [the mortgagor] made an assignment for the benefit of her creditors to one Andrew A. Warfield under the provisions of the insolvency laws of the state of Minnesota."

In the absence of any statute changing the rule, an assignee in a voluntary assignment for the benefit of creditors stands in the shoes of his assignor; his rights and powers are not the same as those of a receiver in equity. It is only by virtue of G. S. 1894, § 4233, that such an assignee can avoid transfers of property by his assignor which are fraudulent as to creditors. Flower v. Cornish, 25 Minn. 473; Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117. But the statute, which is quoted in full in the majority opinion, gives to such assignees the same right, but no greater, to avoid fraudulent transfers, as the creditors whom he is considered as representing would have had to avoid such transfers if no assignment had been made. That is to say, if there are creditors who are entitled to avoid a transfer in a given case, the assignee is considered or presumed to represent

them; but the statute as it reads does not provide that, when the assignee brings an action to avoid a transfer alleged to be fraudulent as to creditors, it shall be presumed that there are creditors who are entitled to avoid the conveyances, from the simple allegation or finding that he is an assignee in insolvency for the benefit of creditors.

If the statute is to be amended by judicial construction so as to provide that, when the assignee brings such an action, it shall be presumed from the simple fact that he is such assignee that there are existing creditors who have proven their debts and are entitled to have the conveyance set aside, why not go further, and amend the statute so as to provide that it shall be also presumed prima facie that he is entitled to recover? If the creditors themselves brought such an action, they would be required to prove that they were creditors, and in a position to avoid the transfer. Why, then, should not their representative make like proof? It is suggested that it would be inconvenient for him to do so. This, if correct, would not justify an arbitrary construction of the statute so as to confer upon the assignee rights and advantages superior to those possessed by his principals, the creditors. But it would seem to be an easy matter for the assignee in any action brought by him to make proof of the existence of creditors, as proof of all claims must be filed. An examination of the paper books in previous cases brought to this court wherein assignees or receivers in insolvency have sought to set aside transfers fraudulent as to creditors or to recover the possession or value of property so transferred, shows that they have invariably proved the existence of creditors, where the fact was not admitted. Thus in Merrill v. Ressler, supra, the assignee expressly alleged in his answer the existence of creditors, some of whom had proved their debts. In Thomas Mnfg. Co. v. Foote, supra, proof was made by the assignee of the existence of creditors. In Chamberlain v. O'Brien, 46 Minn. 80, 48 N. W. 447, which was an action by a receiver in insolvency to set aside a fraudulent conveyance, the complaint directly alleged the existence of creditors. The allegation of the complaint in the case of Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696, alleged that the insolvent was at the commencement of the action indebted to persons other than the mortgagor. In Baker v. Pottle, 48 Minn. 479, 51 N. W. 383, the receiver made proof

of the existence of at least one creditor whose debt was contracted without notice of the alleged fraudulent mortgage. So, also, in Smith v. Pearson, 44 Minn. 397, 46 N. W. 849, the receiver made proof of the existence of creditors, some of whom had proved their debts. This practical construction of the statute by the bar of the state seems to me to be the correct one, and that in an action by an assignee in insolvency or his vendee to set aside a fraudulent transfer of property, or to recover the possession of it or its value, it cannot be presumed from the mere fact that he is such assignee that there are creditors who are entitled to have the transfer set aside. If this be so, then finding No. 5 in this case is not sufficient to justify the conclusion of law that the plaintiff is entitled to judgment, and the judgment appealed from should be affirmed.

BUCK, J. I also dissent upon the grounds stated by the CHIEF JUSTICE.